# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

**03cv12302 RWZ**

| | |
|---|---|
| JAMES KIRKLAND, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CLEAN HARBORS, INC., ALAN S. MCKIM and ROGER A. KOENECKE,<br><br>Defendants. | C. A. No.<br><br>AMOUNT $150<br>SUMMONS ISSUED Yes<br>**JURY TRIAL DEMANDED**<br>WAIVER FORM<br>MCF ISSUED<br>BY DPTY CLK<br>11/18/03 |

MAGISTRATE JUDGE Alexander

## COMPLAINT

Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Clean Harbors, Inc. ("Clean Harbors" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal class action on behalf of purchasers of the securities of Clean Harbors between November 19, 2002 and August 14, 2003, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").



## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") [17 C.F.R. § 240.10b-5].

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

4. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District and Clean Harbors maintains its executive offices in this District.

5. In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6. Plaintiff James Kirkland, as set forth in the accompanying certification, incorporated by reference herein, purchased the securities of Clean Harbors at artificially inflated prices during the Class Period and has been damaged thereby.

7. Defendant Clean Harbors is a Delaware corporation with its principal place of business located at 1501 Washington Street, Braintree, MA 02184. Clean Harbors describes itself as a provider of a wide range of environmental services to a diversified customer base in the United States and Puerto Rico through its subsidiaries.

8.     (a)     Defendant Alan S. McKim ("McKim") served as Clean Harbors's Chief Executive Officer ("CEO"), President and Chairman Of The Board during the Class Period.

(b)     Defendant Roger A. Koenecke ("Koenecke") served as the Company's Chief Financial Officer and Senior Vice President during the Class Period.

(c)     Defendants McKim and Koenecke are collectively referred to herein as the "Individual Defendants."

9.     Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

10.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of Clean Harbors, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and

misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11. As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the NASDAQ National Market ("NASDAQ"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12. The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Clean Harbors, each of the Individual Defendants had access to the adverse undisclosed information about Clean Harbors's business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or

about Clean Harbors and its business issued or adopted by the Company materially false and misleading.

13. The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

14. Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Clean Harbors common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Clean Harbors's business, operations, management and the intrinsic value of Clean Harbors common stock; (ii) enabled Clean Harbors insiders to sell their personally-held Clean Harbors common stock to the unsuspecting market; and (iii) caused plaintiff and other members of the Class to purchase Clean Harbors common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

15. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the securities of Clean Harbors between November 19, 2002 and August 14, 2003, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

16. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Clean Harbors common shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Clean Harbors or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

18. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

19. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by defendants' acts as alleged herein;

(b) whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Clean Harbors; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

20. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background Facts

21. Clean Harbors provides a wide range of environmental services to a diversified customer base in the United States and Puerto Rico through its subsidiaries. The services provided by the Company are classified in four primary categories: treatment and disposal of industrial wastes (Treatment and Disposal); site services provided at customer sites (Site Services); specialized repackaging, treatment and disposal services for laboratory chemicals and household hazardous

7

wastes (CleanPack), and outsourcing of customer's environmental management program (Onsite Services). Clean Harbors also provides transportation for all forms of hazardous wastes, analytical testing services, information management and training services.

22.   On September 11, 2002, Clean Harbors issued a press release announcing that it had completed the previously-announced acquisition of Safety-Kleen Corp.'s Chemical Services Division ("CSD Division"). The Company reported that as a result of the acquisition, it will be on a "run rate to achieve annualized revenues of approximately $750 million . . . " Defendant McKim commented on the announcement stating in pertinent part as follows:

> The CSD acquisition fits squarely with our growth strategy by expanding our geographic footprint, broadening our service offerings and increasing market penetration. . . Clean Harbors now clearly has the size, scope and strategic assets to be the leading hazardous waste services company in North America. By leveraging our industry-leading IT systems and operational controls, we expect to improve service to our customers, increase productivity and achieve substantial cost synergies. Further, we are committed to achieving our EBIDTA goal of $115 million in 2003.
>
> It has been our plan since February to close this transaction in the third quarter and meeting this milestone is a credit to the capabilities of our entire team. The efforts of both companies throughout this complex and dynamic process allowed us to meet our aggressive timetable. We will now bring the same level of energy to the integration process, which is already well underway.

23.   By the start of the Class Period, unbeknownst to investors, Clean Harbors was experiencing difficulties integrating the operations of CSD with its own and, as a result, was failing to generate meaningful benefits from the acquisition. Moreover, the integration process was distracting the Company from its core business, thereby causing the Company to experience declining results. Notwithstanding the foregoing difficulties, throughout the Class Period, defendants projected increasing revenues and earnings for the Company, which caused a dramatic increase in the price of Clean Harbors common stock. While the stock was trading at these levels,

certain Clean Harbor insiders sold their personally-held Clean Harbors common stock to the unsuspecting public. In addition, defendant McKim engaged in a forward sale of 200,000 shares of his stock which permitted him to lock in gains in his stock but not suffer from any decline in the price of Clean Harbors stock.

24.   Then, on May 14, 2003, Clean Harbors surprised the market by announcing that its EBITDA for the first quarter of 2003 was below the quarterly minimum required by certain covenants in the Company's loan agreements and that the Company would have to renegotiate the terms of its agreements with its lenders. In response to this announcement, the price of Clean Harbors stock plummeted from $12.89 per share to $10.90 per share on extremely heavy trading volume.

25.   The true extent of the problems at Clean Harbors were not finally revealed until August 14, 2003, when it announced that it would miss its earnings targets for the second quarter of 2003 and that it was being negatively impacted by a variety of factors. Following this announcement, the price of Clean Harbors common stock declined further to $6.23 per share.

### Materially False And Misleading Statements Issued During The Class Period

26.   The Class Period commences on November 19, 2002. On that date, Clean Harbors issued a press release announcing its financial results for the third quarter of 2002, the period ending September 30, 2002. The Company reported third quarter revenues of $83.4 million. Defendant McKim commented on the results stating in pertinent part as follows:

> Our base business performed well during the third quarter, particularly when measured against the substantial time and effort required by both companies to close the acquisition and begin the integration process. . . Backing out restructuring and acquisition charges, and all acquisition-related costs, the Company achieved break even from operations in the quarter, as well as positive EBITDA. Achieving this

9

positive momentum, in a quarter of great internal activity devoted to closing the acquisition, demonstrates the strength of our organization and the depth of our management team. The integration process is well underway and we are proud of the progress we have achieved to date, including immediately running our entire U.S. operation on the Clean Harbors platform. We remain confident in the quality of the people and assets that we have added to Clean Harbors as well as our ability to recognize $115 million in EBITDA in 2003.. . . We have already benefit[t]ed from significant synergies as we scale our Company to match our growth potential. . .

In the press release, Clean Harbors provided the following earnings guidance:

**Fourth-Quarter 2002**

Revenues of $175 million to $180 million
EBITDA of $19 million to $20 million
Diluted earnings per share of $0.16 to $0.21

**Full-Year 2003**

Revenues of $730 million to $750 million
EBITDA of $115 million
Diluted earnings per share of $2.00 to $2.06

27. Then, on January 6, 2003, Clean Harbors issued a press release announcing that defendant McKim had entered into a "Variable Prepaid Forward" transaction with an affiliate of Credit Suisse First Boston/DLJ. The press release described the transaction as a "tax deferred forward sale of up to 200,000 shares of Clean Harbors common stock, in which Mr. McKim will retain voting rights for all the shares during the three year period and can continue to retain a significant upside interest in a portion of those shares if the stock price continues to move upward over the next three years." By engaging in the forward sale, defendant McKim was able to lock in gains on his Clean Harbors stock without relinquishing control over the shares.

28. The statements referenced above in ¶ 26 were each materially false and misleading when made because they failed to disclose and/or misrepresented the following adverse facts, among others:

(a) that the CSD acquisition was not providing meaningful benefits to the Company. In fact, CSD was experiencing declining demand for its products and services and many of the receivables that CSD was carrying on its books were uncollectible;

(b) that the integration of CSD was negatively impacting the Company's ongoing business such that the Company was losing sales;

(c) that, in addition to the problems attendant to the CSD acquisition, the Company was experiencing declining demand for its products and services; and

(d) based on the foregoing, defendants' lacked a reasonable basis for their earnings projections and positive statements about the Company and its operations.

29.  On March 13, 2003, Clean Harbors issued a press release announcing that it "requires additional time to finalize financial results for the full year and fourth quarter – the first full quarter to include results from the Chemical Services Division (CSD) that Clean Harbors acquired from Safety-Kleen in September 2002." Defendant McKim commented on the announcement stating in pertinent part as follows:

> Because of the magnitude, complexity and unique nature of the CSD acquisition, we require additional time to complete results for the fourth quarter and full year 2002. . . The additional time required to finalize our results is not attributable to any negative or material financial problem. There are two primary issues that we are working through with our auditors, both of which have important balance sheet implications.
>
> First, Clean Harbors has determined that proper purchase accounting will require Clean Harbors to discount certain environmental liabilities assumed as part of the CSD purchase price. Because of this discounting, the estimated environmental liabilities assumed as a result of the CSD acquisition, which had previously been announced at approximately $266 million are expected to be reduced by approximately $43 million. Beginning with the fourth-quarter 2002 results, the newly discounted liabilities are expected to be accompanied by an additional net non-cash accretion expense of approximately $1 million a quarter and a corresponding quarterly reduction in depreciation expense of approximately $700,000.

> Second, in addition to the expected reduction resulting from the discounting, both Clean Harbors and our auditors have continued to review the estimated dollar amount of the environmental liabilities that we assumed from Safety-Kleen upon completion of the CSD acquisition. Based on Clean Harbors' anticipated expenditures in 2003 on these environmental liabilities, there may be a need to further adjust the Company's environmental reserves downward.

The Company reported that it expects to report fourth-quarter revenues of $152.5 million to $153.5 million and that net income is expected to be $3 million to $4 million, or $0.17 to $0.23 per share.

Defendant McKim commented on the results, stating in pertinent part as follows:

> Although revenues were less than previously forecasted, we expect to meet our previous EPS guidance for the fourth quarter, which demonstrates that our cost reductions and integration plan are on track. Throughout the fourth quarter, our energy was primarily focused internally on meeting our integration objectives, including the swift implementation of cost synergies. Through strict adherence to our sourcing and profit-producing initiatives, we anticipate delivering positive bottom-line results.
>
> We anticipate that revenues for the fourth quarter will be below our previous guidance due to a number of factors. . . Externally, the lack of large emergency events and remediation projects, and continued economic sluggishness limited revenue opportunities. Internally, the combination of instituting new systems and procedures, reducing headcount, and refining our organization also hindered our ability to effectively pursue top-line growth across our entire infrastructure.

30.     In response to this announcement, the price of Clean Harbors common stock declined precipitously falling from $12.69 per share to $8.94 per share on extremely heavy volume. Defendants, however, were still concealing the true operating condition of the Company.

31.     Indeed, in an effort to obscure and continue to conceal the problems at the Company, defendants represented that the Company was still on track to meet its EBITDA guidance and that the business of the Company was performing well notwithstanding the Company's announcement and the decline in the price of the stock. For example, after the earnings release, Clean Harbors held a conference call to discuss the earnings announcement and the Company's operations. During that

12

call, in addition to positive statements regarding cost reductions and cross-selling opportunities, among other things, defendant McKim foreforecast strong results for the first and second quarters of fiscal 2003, stating in pertinent part as follows:

> Now I would like to talk about our outlook for Q1 and 2003. Due to seasonality, Q1 is traditionally the slowest quarter for Clean Harbors. Taking into account the integration process, the effect of what was really a harsh winter and continued economic softness, we expect to achieve Q1 revenues of $140m to $150m. We are also updating our revenue guidance for the year. Based on our current expectations and market conditions, we now anticipate 2003 revenues in the range of $670m to $680m. As we stated in our news release this morning, we remain focused on achieving our previous guidance of $115m in EBITA and EPS in the range of $2.00 to $2.06 per diluted share. We intend to provide updated annual guidance on our first quarter conference call.

32.     Defendants' efforts were successful and in the weeks following the announcement the price of Clean Harbors common stock began to recover, rising from $9.55 per share on March 14, 2003 to $14.08 per share on April 1, 2003 – the date it issued a press release announcing its fourth quarter and year-end financial results.

33.     On April 1, 2003, Clean Harbors issued a press release announcing its financial results for the fourth quarter and year-ended December 31, 2002. The Company reported that net income for the fourth quarter was $4.9 million, or $0.29 per share, and that EBITDA for the fourth quarter was $18.3 million. Defendant McKim commented on the results, stating in pertinent part as follows:

> Our financial results for the fourth quarter were within the updated guidance range that we provided on March 13... We believe that the reduction in the environmental liabilities that we assumed in the CSD acquisition is a very positive development for the Company and we remain confident in our ability to successfully manage these acquired environmental liabilities because of our experience in applying alternative treatment protocols to contaminated sites.

With respect to financial guidance, the press release stated in pertinent part as follows: