The Company is affirming its previously announced first-quarter 2003 revenue guidance of $140 million to $150 million. Based on the Company expectations and current economic conditions, Clean Harbors anticipates its revenue for the full year of 2003 will be in the previously announced range of $670 million to $680 million. The Company remains focused on its previously announced goal of $115 million in EBITDA. The Company will be adopting accounting rule SFAS 143, which requires companies to record liabilities for asset retirement. The Company will not be providing updated EPS guidance for the year until it has determined the full effect of SFAS 143.

34. The statements referenced above in ¶¶ 29, 31 and 33 were materially false and misleading for the same reasons stated above in ¶ 28.

35. Then, on May 14, 2003, Clean Harbors surprised the market when it issued a press release announcing that its EBITDA for the first quarter of 2003 was below the quarterly minimum required by certain covenants in the Company's loan agreements and that the Company would have to renegotiate the terms of its agreements with its lenders. The Company reported that its EBITDA for the first quarter was $7.4 million. Defendant McKim commented on the announcement stating in pertinent part as follows:

> Despite the adverse impact of a weak economy and the uncertainties of war, our first-quarter revenues exceeded the low end of our previously announced guidance. . . We are disappointed, however, with the bottom-line contribution from our operations for the quarter. Although the first quarter of the year is historically our slowest quarter, and has traditionally been an unprofitable quarter for us and other companies in our industry, this quarter's annual cyclical business downturn was intensified by several factors. These included a particularly harsh winter along the East Coast of the U.S. and throughout Canada, the continued U.S. economic slump, which has also affected our Canadian business activities, a temporary slowdown in government-related work based on restricted access to military facilities, and an absence of any major events work. The effects of the poor weather were felt across the Company, particularly in terms of their impact on margins generated by our incinerator business, where utilization was off considerably. We also experienced a drop-off in large contaminated soils projects in the quarter, which directly affected the profitability of our landfills.
>
> We also encountered higher-than-anticipated costs in several areas during the first quarter. . .These included one-time professional services expenses related to the CSD

14

integration, very complicated auditing reviews and an unanticipated non-cash currency conversion loss based on our Canadian operations. In addition, we experienced substantial increases in transportation and utility expenses. These costs were well above plan due to the inclement weather and a significantly higher-than-expected increase in employee health care costs. While many of these items were one-time in nature or weather-related, we are taking aggressive action to ensure that we mitigate the impact of these cost pressures

The Company also reduced its financial guidance for the fiscal year, reducing its EBITDA guidance to $85 to $90 million as compared to the $115 million figure it had stated to investors six weeks earlier. Defendants, however, were continuing to conceal the true deterioration in the Company's business and the weakening of the Company's financial position.

36. In response to these negative announcements, the price of Clean Harbors stock dropped precipitously falling from $12.89 per share to $10.90 per share. In the days preceding the announcement, the price of Clean Harbors stock declined from $14.02 per share on May 7, 2003 to $12.89 per share on May 13, 2003 on no apparent news.

37. Finally, on August 14, 2003, Clean Harbors issued a press release announcing its financial results for the second quarter of 2003, the period ending June 30, 2003. The Company reported that it suffered a net loss of ($6.8) million or ($0.57) per share. Defendant McKim commented on the results stating in pertinent part as follows:

> While we exceeded our quarterly revenue guidance, our bottom-line results were below our expectations as a result of substantial volume shortfalls in our landfill business and other softness in waste disposal volumes into our facilities in the second quarter. The drop in volumes to these facilities is an industry-wide phenomenon that our competitors, as well as our remediation and engineering clients are all experiencing.
>
> We also continued to experience a reduction in revenues from our distributors and brokers due to the increased financial pressures they are facing. . . We expect these volumes to continue to be constrained because of the uncertain economic status of some of our traditional brokers and our conservative policy of not incurring any substantial credit risks with these customers. In addition to the significant volume

15

shortfall and a competitive market environment, our bottom-line results were affected by higher-than-expected health care costs, the negative impact associated with the strengthening Canadian dollar on U.S. dollar denominated sales in Canada, the settlement of a state sales tax audit and final settlement of outstanding invoicing issues with Safety-Kleen. In total, these four additional factors affected our bottom-line by over $4 million in the quarter.

We are intensifying our program to control expenses and eliminate costs. . . Furthermore, we are continuing our integration efforts of the CSD assets acquired from Safety-Kleen. We are accelerating the internalization of select transportation and waste disposal functions - steps we previously anticipated taking next year. We are also currently reviewing our network of plants and facilities for areas to further streamline our organization and increase efficiencies. Finally, we are taking more aggressive steps to grow our core revenues, increase EBITDA and regain profitability as quickly as possible. We are seizing opportunities we have identified in several key vertical markets by hiring additional sales personnel during the third quarter.

38. Following this announcement, the price of Clean Harbors common stock declined from $9.50 per share to $6.23 per share, on heavy trading volume.

39. The market for Clean Harbors' common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Clean Harbors' common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Clean Harbors common stock relying upon the integrity of the market price of Clean Harbors' common stock and market information relating to Clean Harbors, and have been damaged thereby.

40. During the Class Period, defendants materially misled the investing public, thereby inflating the price of Clean Harbors' common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

16

41. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Clean Harbors' business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Clean Harbors and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

42. As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Clean Harbors, their control over, and/or receipt and/or modification of Clean Harbors's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Clean Harbors, participated in the fraudulent scheme alleged herein.

43. In addition, defendant McKim's scienter is further evidenced by his entering into the Variable Prepaid Forward transaction detailed above in ¶ 27. By selling forward his shares while at the same time retaining rights to some upside participation should the price of Clean Harbors common stock rise, defendant McKim was able to protect himself against future declines in the price of Clean Harbors common stock

44. Finally, during the Class Period, while defendants were concealing the truth about the Company and its operations, certain Clean Harbors insiders sold their personally-held Clean Harbors shares to the unsuspecting market, as detailed in the following chart:

| Insider | Date of Sale | Number of Shares | Price per share | Value |
|---|---|---|---|---|
| David M Parry, Senior VP | 1/9/03 | 11,000 | $15.30 | $ 168,245.00 |
| Eric Gerstenberg, VP | 12/24/02 | 2,000 | 16.35 | 32,700.00 |
| Gene Cookson, Officer | 12/26/02 | 25,000 | 16.04 | 401,000.00 |
|  | 12/30/02 | 8,300 | 16.00 | 132,800.00 |
|  | 1/9/03 | 20,000 | 16.00 | 320,000.00 |
|  | 1/10/03 | 28,700 | 16.13 | 462,902.30 |
| Total |  | 82,000 |  | 1,316,702.30 |
| John P Lawton, VP | 12/4/02 | 10,000 | 15.11 | 151,140.00 |
| William J Geary, Executive VP | 1/10/03 | 7,400 | 15.56 | 115,144.00 |
| **Grand Total** |  | **112,400** | **$15.87** | **$1,783,931.30** |

These sales were unusual in timing and amount given the non-disclosure of material adverse facts concerning the Company and its business as detailed herein.

18

## Applicability Of Presumption Of Reliance:
## Fraud-On-The-Market Doctrine

45. At all relevant times, the market for Clean Harbors' common stock was an efficient market for the following reasons, among others:

(a) Clean Harbors' stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Clean Harbors filed periodic public reports with the SEC and the NASDAQ;

(c) Clean Harbors regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Clean Harbors was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

46. As a result of the foregoing, the market for Clean Harbors' common stock promptly digested current information regarding Clean Harbors from all publicly available sources and reflected such information in Clean Harbors' stock price. Under these circumstances, all purchasers of Clean Harbors' common stock during the Class Period suffered similar injury through their purchase of Clean Harbors' common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

47. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Clean Harbors who knew that those statements were false when made.

## FIRST CLAIM

### Violation Of Section 10(b) Of The Exchange Act Against And Rule 10b-5 Promulgated Thereunder Against All Defendants

48. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49. During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (ii) cause plaintiff and other members of the Class to purchase Clean Harbors's common stock at artificially inflated prices. In

furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

50. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Clean Harbors' common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

51. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Clean Harbors as specified herein.

52. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Clean Harbors's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Clean Harbors and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which

21

operated as a fraud and deceit upon the purchasers of Clean Harbors common stock during the Class Period.

53.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

54.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Clean Harbors's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the

misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

55. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Clean Harbors's common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of Clean Harbors's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Clean Harbors common stock during the Class Period at artificially high prices and were damaged thereby.

56. At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the other members of the Class and the marketplace known the truth regarding Clean Harbors's financial results, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their Clean Harbors common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

57. By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

58. As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

## SECOND CLAIM

### Violation Of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

59. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60. The Individual Defendants acted as controlling persons of Clean Harbors within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61. In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control

or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

62. As set forth above, Clean Harbors and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:       November 18, 2003

By: _____
Thomas G. Shapiro BBO#454680
Theodore M. Hess-Mahan BBO#$557109
**SHAPIRO HABER & URMY LLP**
75 State Street
Boston MA  02109
(617) 439-3939

**CAULEY GELLER BOWMAN & COATES & RUDMAN, LLP**
Samuel H. Rudman
David A. Rosenfeld
200 Broadhollow Road, Suite 406
Melville, NY 11747
(631) 367-7100

**SCHIFFRIN & BARROWAY, LLP**
Marc A. Topaz
Three Bala Plaza East
Suite 500
Bala Cynwyd, PA  19004
(610) 667-7706

**Attorneys for Plaintiff**

Cauley Geller Bowman Coates & Rudman, LLP
One Boca Place
2255 Glades Road, Suite 421A
Boca Raton, FL 33431
(561) 750-3000
(561) 750-3364 Facsimile

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

JAMES KIRKLAND ("Plaintiff"), declares as to the claims asserted, or to be asserted, under the federal securities laws, that:

1. Plaintiff has reviewed the CLEAN HARBORS INC. (CLHB) complaint and authorized its filing.

2. Plaintiff did not purchase any common stock/securities that are the subject of this action at the direction of Plaintiff's counsel or in order to participate any private action under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4. The following includes all of Plaintiff's transactions during the Class Period specified in the complaint for the common stock/securities that are the subject of this action:

| SECURITY (Common Stock, Call, Put, Bonds) | TRANSACTION (Purchase, Sale) | QUANTITY | TRADE DATE | PRICE PER SHARE/SECURITY |
|---|---|---|---|---|
| Common | P | 400 | 6-20-02 | 13.63 |
| / | P | 300 | 11-14-02 | 8.00 |
| / | S | 300 | 12-5-02 | 16.68 |
| / | P | 400 | 2-10-03 | 12.53 |
| / | P | 500 | 2-21-03 | 13.44 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

Please list additional transactions on a separate sheet if necessary.

5. Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws within the past three years, unless otherwise stated in the space below:

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 5 day of SEPTEMBER, 2003.

SIGNATURE