

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

# 03 ᶜᵛ 1 2 3 0 2 RWZ

---

JAMES KIRKLAND, Individually and On Behalf of
All Others Similarly Situated,

     Plaintiff,

  vs.

CLEAN HARBORS, INC., ALAN S. MCKIM and
ROGER A. KOENECKE,

     Defendants.

C. A. No.

**JURY TRIAL DEMANDED**

---

MAGISTRATE JUDGE Alexander   **COMPLAINT**

Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Clean Harbors, Inc. ("Clean Harbors" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1  This is a federal class action on behalf of purchasers of the securities of Clean Harbors between November 19, 2002 and August 14, 2003, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") [17 C.F.R. § 240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act [15 U.S.C. § 78aa]

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District and Clean Harbors maintains its executive offices in this District.

5.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff James Kirkland, as set forth in the accompanying certification, incorporated by reference herein, purchased the securities of Clean Harbors at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant Clean Harbors is a Delaware corporation with its principal place of business located at 1501 Washington Street, Braintree, MA 02184. Clean Harbors describes itself as a provider of a wide range of environmental services to a diversified customer base in the United States and Puerto Rico through its subsidiaries.

8.    (a)  Defendant Alan S. McKim ("McKim") served as Clean Harbors's Chief Executive Officer ("CEO"), President and Chairman Of The Board during the Class Period.

(b)  Defendant Roger A. Koenecke ("Koenecke") served as the Company's Chief Financial Officer and Senior Vice President during the Class Period.

(c)  Defendants McKim and Koenecke are collectively referred to herein as the "Individual Defendants."

9.    Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

10.    It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of Clean Harbors, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and

3

misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11.    As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the NASDAQ National Market ("NASDAQ"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information.    The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12.    The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature.    Because of their Board membership and/or executive and managerial positions with Clean Harbors, each of the Individual Defendants had access to the adverse undisclosed information about Clean Harbors's business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or

about Clean Harbors and its business issued or adopted by the Company materially false and misleading.

13.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

14.    Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Clean Harbors common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Clean Harbors's business, operations, management and the intrinsic value of Clean Harbors common stock; (ii) enabled Clean Harbors insiders to sell their personally-held Clean Harbors common stock to the unsuspecting market; and (iii) caused plaintiff and other members of the Class to purchase Clean Harbors common stock at artificially inflated prices.

5

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

15.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the securities of Clean Harbors between November 19, 2002 and August 14, 2003, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

16.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Clean Harbors common shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Clean Harbors or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

18.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

6

19.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by defendants' acts as alleged herein;

(b) whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Clean Harbors; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

20.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background Facts

21     Clean Harbors provides a wide range of environmental services to a diversified customer base in the United States and Puerto Rico through its subsidiaries. The services provided by the Company are classified in four primary categories: treatment and disposal of industrial wastes (Treatment and Disposal); site services provided at customer sites (Site Services); specialized repackaging, treatment and disposal services for laboratory chemicals and household hazardous

wastes (CleanPack), and outsourcing of customer's environmental management program (Onsite

Services). Clean Harbors also provides transportation for all forms of hazardous wastes, analytical

testing services, information management and training services.

22.    On September 11, 2002, Clean Harbors issued a press release announcing that it had

completed the previously-announced acquisition of Safety-Kleen Corp.'s Chemical Services

Division ("CSD Division"). The Company reported that as a result of the acquisition, it will be on

a "run rate to achieve annualized revenues of approximately $750 million . . . " Defendant McKim

commented on the announcement stating in pertinent part as follows:

> The CSD acquisition fits squarely with our growth strategy by expanding our
> geographic footprint, broadening our service offerings and increasing market
> penetration. . . Clean Harbors now clearly has the size, scope and strategic assets to
> be the leading hazardous waste services company in North America. By leveraging
> our industry-leading IT systems and operational controls, we expect to improve
> service to our customers, increase productivity and achieve substantial cost synergies.
> Further, we are committed to achieving our EBIDTA goal of $115 million in 2003.

> It has been our plan since February to close this transaction in the third quarter and
> meeting this milestone is a credit to the capabilities of our entire team. The efforts
> of both companies throughout this complex and dynamic process allowed us to meet
> our aggressive timetable. We will now bring the same level of energy to the
> integration process, which is already well underway.

23.    By the start of the Class Period, unbeknownst to investors, Clean Harbors was

experiencing difficulties integrating the operations of CSD with its own and, as a result, was failing

to generate meaningful benefits from the acquisition. Moreover, the integration process was

distracting the Company from its core business, thereby causing the Company to experience

declining results. Notwithstanding the foregoing difficulties, throughout the Class Period,

defendants projected increasing revenues and earnings for the Company, which caused a dramatic

increase in the price of Clean Harbors common stock. While the stock was trading at these levels,

certain Clean Harbor insiders sold their personally-held Clean Harbors common stock to the unsuspecting public. In addition, defendant McKim engaged in a forward sale of 200,000 shares of his stock which permitted him to lock in gains in his stock but not suffer from any decline in the price of Clean Harbors stock.

24.     Then, on May 14, 2003, Clean Harbors surprised the market by announcing that its EBITDA for the first quarter of 2003 was below the quarterly minimum required by certain covenants in the Company's loan agreements and that the Company would have to renegotiate the terms of its agreements with its lenders. In response to this announcement, the price of Clean Harbors stock plummeted from $12.89 per share to $10.90 per share on extremely heavy trading volume.

25.     The true extent of the problems at Clean Harbors were not finally revealed until August 14, 2003, when it announced that it would miss its earnings targets for the second quarter of 2003 and that it was being negatively impacted by a variety of factors. Following this announcement, the price of Clean Harbors common stock declined further to $6.23 per share.

### Materially False And Misleading
### Statements Issued During The Class Period

26.     The Class Period commences on November 19, 2002. On that date, Clean Harbors issued a press release announcing its financial results for the third quarter of 2002, the period ending September 30, 2002. The Company reported third quarter revenues of $83.4 million. Defendant McKim commented on the results stating in pertinent part as follows:

> Our base business performed well during the third quarter, particularly when measured against the substantial time and effort required by both companies to close the acquisition and begin the integration process. . . Backing out restructuring and acquisition charges, and all acquisition-related costs, the Company achieved break even from operations in the quarter, as well as positive EBITDA. Achieving this

positive momentum, in a quarter of great internal activity devoted to closing the acquisition, demonstrates the strength of our organization and the depth of our management team. The integration process is well underway and we are proud of the progress we have achieved to date, including immediately running our entire U.S. operation on the Clean Harbors platform. We remain confident in the quality of the people and assets that we have added to Clean Harbors as well as our ability to recognize $115 million in EBITDA in 2003.... We have already benefit[t]ed from significant synergies as we scale our Company to match our growth potential. . .

In the press release, Clean Harbors provided the following earnings guidance:

**Fourth-Quarter 2002**

Revenues of $175 million to $180 million
EBITDA of $19 million to $20 million
Diluted earnings per share of $0.16 to $0.21

**Full-Year 2003**

Revenues of $730 million to $750 million
EBITDA of $115 million
Diluted earnings per share of $2.00 to $2.06

27.    Then, on January 6, 2003, Clean Harbors issued a press release announcing that defendant McKim had entered into a "Variable Prepaid Forward" transaction with an affiliate of Credit Suisse First Boston/DLJ. The press release described the transaction as a "tax deferred forward sale of up to 200,000 shares of Clean Harbors common stock, in which Mr. McKim will retain voting rights for all the shares during the three year period and can continue to retain a significant upside interest in a portion of those shares if the stock price continues to move upward over the next three years." By engaging in the forward sale, defendant McKim was able to lock in gains on his Clean Harbors stock without relinquishing control over the shares.

28.    The statements referenced above in ¶ 26 were each materially false and misleading when made because they failed to disclose and/or misrepresented the following adverse facts, among others:

10

(a) that the CSD acquisition was not providing meaningful benefits to the Company. In fact, CSD was experiencing declining demand for its products and services and many of the receivables that CSD was carrying on its books were uncollectible;

(b) that the integration of CSD was negatively impacting the Company's ongoing business such that the Company was losing sales;

(c) that, in addition to the problems attendant to the CSD acquisition, the Company was experiencing declining demand for its products and services; and

(d) based on the foregoing, defendants' lacked a reasonable basis for their earnings projections and positive statements about the Company and its operations.

29.     On March 13, 2003, Clean Harbors issued a press release announcing that it "requires additional time to finalize financial results for the full year and fourth quarter – the first full quarter to include results from the Chemical Services Division (CSD) that Clean Harbors acquired from Safety-Kleen in September 2002." Defendant McKim commented on the announcement stating in pertinent part as follows:

> Because of the magnitude, complexity and unique nature of the CSD acquisition, we require additional time to complete results for the fourth quarter and full year 2002. . . The additional time required to finalize our results is not attributable to any negative or material financial problem. There are two primary issues that we are working through with our auditors, both of which have important balance sheet implications.
>
> First, Clean Harbors has determined that proper purchase accounting will require Clean Harbors to discount certain environmental liabilities assumed as part of the CSD purchase price. Because of this discounting, the estimated environmental liabilities assumed as a result of the CSD acquisition, which had previously been announced at approximately $266 million are expected to be reduced by approximately $43 million. Beginning with the fourth-quarter 2002 results, the newly discounted liabilities are expected to be accompanied by an additional net non-cash accretion expense of approximately $1 million a quarter and a corresponding quarterly reduction in depreciation expense of approximately $700,000.

11

Second, in addition to the expected reduction resulting from the discounting, both Clean Harbors and our auditors have continued to review the estimated dollar amount of the environmental liabilities that we assumed from Safety-Kleen upon completion of the CSD acquisition. Based on Clean Harbors' anticipated expenditures in 2003 on these environmental liabilities, there may be a need to further adjust the Company's environmental reserves downward.

The Company reported that it expects to report fourth-quarter revenues of $152.5 million to $153.5 million and that net income is expected to be $3 million to $4 million, or $0.17 to $0.23 per share.

Defendant McKim commented on the results, stating in pertinent part as follows:

Although revenues were less than previously forecasted, we expect to meet our previous EPS guidance for the fourth quarter, which demonstrates that our cost reductions and integration plan are on track. Throughout the fourth quarter, our energy was primarily focused internally on meeting our integration objectives, including the swift implementation of cost synergies. Through strict adherence to our sourcing and profit-producing initiatives, we anticipate delivering positive bottom-line results.

We anticipate that revenues for the fourth quarter will be below our previous guidance due to a number of factors. . . Externally, the lack of large emergency events and remediation projects, and continued economic sluggishness limited revenue opportunities. Internally, the combination of instituting new systems and procedures, reducing headcount, and refining our organization also hindered our ability to effectively pursue top-line growth across our entire infrastructure.

30.    In response to this announcement, the price of Clean Harbors common stock declined precipitously falling from $12.69 per share to $8.94 per share on extremely heavy volume. Defendants, however, were still concealing the true operating condition of the Company.

31.    Indeed, in an effort to obscure and continue to conceal the problems at the Company, defendants represented that the Company was still on track to meet its EBITDA guidance and that the business of the Company was performing well notwithstanding the Company's announcement and the decline in the price of the stock. For example, after the earnings release, Clean Harbors held a conference call to discuss the earnings announcement and the Company's operations. During that

call, in addition to positive statements regarding cost reductions and cross-selling opportunities, among other things, defendant McKim foreforecast strong results for the first and second quarters of fiscal 2003, stating in pertinent part as follows:

> Now I would like to talk about our outlook for Q1 and 2003. Due to seasonality, Q1 is traditionally the slowest quarter for Clean Harbors. Taking into account the integration process, the effect of what was really a harsh winter and continued economic softness, we expect to achieve Q1 revenues of $140m to $150m. We are also updating our revenue guidance for the year. Based on our current expectations and market conditions, we now anticipate 2003 revenues in the range of $670m to $680m. As we stated in our news release this morning, we remain focused on achieving our previous guidance of $115m in EBITA and EPS in the range of $2.00 to $2.06 per diluted share. We intend to provide updated annual guidance on our first quarter conference call.

32. Defendants' efforts were successful and in the weeks following the announcement the price of Clean Harbors common stock began to recover, rising from $9.55 per share on March 14, 2003 to $14.08 per share on April 1, 2003 – the date it issued a press release announcing its fourth quarter and year-end financial results.

33. On April 1, 2003, Clean Harbors issued a press release announcing its financial results for the fourth quarter and year-ended December 31, 2002. The Company reported that net income for the fourth quarter was $4.9 million, or $0.29 per share, and that EBITDA for the fourth quarter was $18.3 million. Defendant McKim commented on the results, stating in pertinent part as follows:

> Our financial results for the fourth quarter were within the updated guidance range that we provided on March 13... We believe that the reduction in the environmental liabilities that we assumed in the CSD acquisition is a very positive development for the Company and we remain confident in our ability to successfully manage these acquired environmental liabilities because of our experience in applying alternative treatment protocols to contaminated sites.

With respect to financial guidance, the press release stated in pertinent part as follows:

The Company is affirming its previously announced first-quarter 2003 revenue guidance of $140 million to $150 million. Based on the Company expectations and current economic conditions, Clean Harbors anticipates its revenue for the full year of 2003 will be in the previously announced range of $670 million to $680 million. The Company remains focused on its previously announced goal of $115 million in EBITDA. The Company will be adopting accounting rule SFAS 143, which requires companies to record liabilities for asset retirement. The Company will not be providing updated EPS guidance for the year until it has determined the full effect of SFAS 143.

34.    The statements referenced above in ¶¶ 29, 31 and 33 were materially false and misleading for the same reasons stated above in ¶ 28.

35.    Then, on May 14, 2003, Clean Harbors surprised the market when it issued a press release announcing that its EBITDA for the first quarter of 2003 was below the quarterly minimum required by certain covenants in the Company's loan agreements and that the Company would have to renegotiate the terms of its agreements with its lenders. The Company reported that its EBITDA for the first quarter was $7.4 million. Defendant McKim commented on the announcement stating in pertinent part as follows:

> Despite the adverse impact of a weak economy and the uncertainties of war, our first-quarter revenues exceeded the low end of our previously announced guidance. . . We are disappointed, however, with the bottom-line contribution from our operations for the quarter. Although the first quarter of the year is historically our slowest quarter, and has traditionally been an unprofitable quarter for us and other companies in our industry, this quarter's annual cyclical business downturn was intensified by several factors. These included a particularly harsh winter along the East Coast of the U.S. and throughout Canada, the continued U.S. economic slump, which has also affected our Canadian business activities, a temporary slowdown in government-related work based on restricted access to military facilities, and an absence of any major events work. The effects of the poor weather were felt across the Company, particularly in terms of their impact on margins generated by our incinerator business, where utilization was off considerably. We also experienced a drop-off in large contaminated soils projects in the quarter, which directly affected the profitability of our landfills.
>
> We also encountered higher-than-anticipated costs in several areas during the first quarter. . .These included one-time professional services expenses related to the CSD

integration, very complicated auditing reviews and an unanticipated non-cash currency conversion loss based on our Canadian operations. In addition, we experienced substantial increases in transportation and utility expenses. These costs were well above plan due to the inclement weather and a significantly higher-than-expected increase in employee health care costs. While many of these items were one-time in nature or weather-related, we are taking aggressive action to ensure that we mitigate the impact of these cost pressures

The Company also reduced its financial guidance for the fiscal year, reducing its EBITDA guidance to $85 to $90 million as compared to the $115 million figure it had stated to investors six weeks earlier. Defendants, however, were continuing to conceal the true deterioration in the Company's business and the weakening of the Company's financial position.

36.    In response to these negative announcements, the price of Clean Harbors stock dropped precipitously falling from $12.89 per share to $10.90 per share. In the days preceding the announcement, the price of Clean Harbors stock declined from $14.02 per share on May 7, 2003 to $12.89 per share on May 13, 2003 on no apparent news.

37.    Finally, on August 14, 2003, Clean Harbors issued a press release announcing its financial results for the second quarter of 2003, the period ending June 30, 2003. The Company reported that it suffered a net loss of ($6.8) million or ($0.57) per share. Defendant McKim commented on the results stating in pertinent part as follows:

> While we exceeded our quarterly revenue guidance, our bottom-line results were below our expectations as a result of substantial volume shortfalls in our landfill business and other softness in waste disposal volumes into our facilities in the second quarter. The drop in volumes to these facilities is an industry-wide phenomenon that our competitors, as well as our remediation and engineering clients are all experiencing.
>
> We also continued to experience a reduction in revenues from our distributors and brokers due to the increased financial pressures they are facing. . . We expect these volumes to continue to be constrained because of the uncertain economic status of some of our traditional brokers and our conservative policy of not incurring any substantial credit risks with these customers. In addition to the significant volume

shortfall and a competitive market environment, our bottom-line results were affected by higher-than-expected health care costs, the negative impact associated with the strengthening Canadian dollar on U.S. dollar denominated sales in Canada, the settlement of a state sales tax audit and final settlement of outstanding invoicing issues with Safety-Kleen. In total, these four additional factors affected our bottom-line by over $4 million in the quarter.

We are intensifying our program to control expenses and eliminate costs. . . Furthermore, we are continuing our integration efforts of the CSD assets acquired from Safety-Kleen. We are accelerating the internalization of select transportation and waste disposal functions - steps we previously anticipated taking next year. We are also currently reviewing our network of plants and facilities for areas to further streamline our organization and increase efficiencies. Finally, we are taking more aggressive steps to grow our core revenues, increase EBITDA and regain profitability as quickly as possible. We are seizing opportunities we have identified in several key vertical markets by hiring additional sales personnel during the third quarter.

Following this announcement, the price of Clean Harbors common stock declined from $9.50 per share to $6.23 per share, on heavy trading volume.

The market for Clean Harbors' common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Clean Harbors' common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Clean Harbors common stock relying upon the integrity of the market price of Clean Harbors' common stock and market information relating to Clean Harbors, and have been damaged thereby.

40.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Clean Harbors' common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

16

41    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Clean Harbors' business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Clean Harbors and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

42.    As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Clean Harbors, their control over, and/or receipt and/or modification of Clean Harbors's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Clean Harbors, participated in the fraudulent scheme alleged herein.

43.    In addition, defendant McKim's scienter is further evidenced by his entering into the Variable Prepaid Forward transaction detailed above in ¶ 27.  By selling forward his shares while at the same time retaining rights to some upside participation should the price of Clean Harbors common stock rise, defendant McKim was able to protect himself against future declines in the price of Clean Harbors common stock

44.    Finally, during the Class Period, while defendants were concealing the truth about the Company and its operations, certain Clean Harbors insiders sold their personally-held Clean Harbors shares to the unsuspecting market, as detailed in the following chart:

| Insider | Date of Sale | Number of Shares | Price per share | Value |
|---|---|---|---|---|
| David M Parry, Senior VP | 1/9/03 | 11,000 | $15.30 | $   168,245.00 |
| | | | | |
| Eric Gerstenberg, VP | 12/24/02 | 2,000 | 16.35 | 32,700.00 |
| | | | | |
| Gene Cookson, Officer | 12/26/02 | 25,000 | 16.04 | 401,000.00 |
| | 12/30/02 | 8,300 | 16.00 | 132,800.00 |
| | 1/9/03 | 20,000 | 16.00 | 320,000.00 |
| | 1/10/03 | 28,700 | 16.13 | 462,902.30 |
| Total | | 82,000 | | 1,316,702.30 |
| | | | | |
| John P Lawton, VP | 12/4/02 | 10,000 | 15.11 | 151,140.00 |
| | | | | |
| William J Geary, Executive VP | 1/10/03 | 7,400 | 15.56 | 115,144.00 |
| Grand Total | | 112,400 | $15.87 | $1,783,931.30 |

These sales were unusual in timing and amount given the non-disclosure of material adverse facts concerning the Company and its business as detailed herein.

## Applicability Of Presumption Of Reliance:
## <u>Fraud-On-The-Market Doctrine</u>

45.    At all relevant times, the market for Clean Harbors' common stock was an efficient market for the following reasons, among others:

(a) Clean Harbors' stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Clean Harbors filed periodic public reports with the SEC and the NASDAQ;

(c) Clean Harbors regularly communicated with public investors <u>via</u> established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Clean Harbors was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

46.    As a result of the foregoing, the market for Clean Harbors' common stock promptly digested current information regarding Clean Harbors from all publicly available sources and reflected such information in Clean Harbors' stock price. Under these circumstances, all purchasers of Clean Harbors' common stock during the Class Period suffered similar injury through their purchase of Clean Harbors' common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

47.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Clean Harbors who knew that those statements were false when made.

## FIRST CLAIM

### Violation Of Section 10(b) Of
### The Exchange Act Against And Rule 10b-5
### Promulgated Thereunder Against All Defendants

48.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.     During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (ii) cause plaintiff and other members of the Class to purchase Clean Harbors's common stock at artificially inflated prices.  In

furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

50. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Clean Harbors' common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

51 Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Clean Harbors as specified herein.

52 These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Clean Harbors's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Clean Harbors and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which

operated as a fraud and deceit upon the purchasers of Clean Harbors common stock during the Class Period.

53.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

54.    The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Clean Harbors's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the

misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

55. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Clean Harbors's common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of Clean Harbors's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Clean Harbors common stock during the Class Period at artificially high prices and were damaged thereby.

56. At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the other members of the Class and the marketplace known the truth regarding Clean Harbors's financial results, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their Clean Harbors common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

57. By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

58.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

## SECOND CLAIM

### Violation Of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

59.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60.    The Individual Defendants acted as controlling persons of Clean Harbors within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61    In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control

or influence the particular transactions giving rise to the securities violations as alleged herein, and

exercised the same.

62.     As set forth above, Clean Harbors and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:        November 18, 2003

By: _____

Thomas G. Shapiro BBO#454680
Theodore M. Hess-Mahan BBO#$557109
**SHAPIRO HABER & URMY LLP**
75 State Street
Boston MA  02109
(617) 439-3939

**CAULEY   GELLER   BOWMAN   &
COATES & RUDMAN, LLP**
Samuel H.  Rudman
David A. Rosenfeld
200 Broadhollow Road, Suite 406
Melville, NY 11747
(631) 367-7100

**SCHIFFRIN & BARROWAY, LLP**
Marc A. Topaz
Three Bala Plaza East
Suite 500
Bala Cynwyd, PA  19004
(610) 667-7706

**Attorneys for Plaintiff**

Cauley Geller Bowman Coates & Rudman, LLP
One Boca Place
2255 Glades Road, Suite 421A
Boca Raton, FL 33431
(561) 750-3000
(561) 750-3364 Facsimile

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

JAMES KIRKLAND ("Plaintiff"), declares as to the claims asserted, or to be asserted, under the federal securities laws, that:

1.    Plaintiff has reviewed the CLEAN HARBORS INC. (CLHB) complaint and authorized its filing.

2.    Plaintiff did not purchase any common stock/securities that are the subject of this action at the direction of Plaintiff's counsel or in order to participate any private action under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4.    The following includes all of Plaintiff's transactions during the Class Period specified in the complaint for the common stock/securities that are the subject of this action:

| SECURITY (Common Stock, Call, Put, Bonds) | TRANSACTION (Purchase, Sale) | QUANTITY | TRADE DATE | PRICE PER SHARE/SECURITY |
|---|---|---|---|---|
| Common | P | 400 | 6-20-02 | 13.63 |
| | P | 300 | 11-4-02 | 8.00 |
| | S | 300 | 12-5-02 | 16.48 |
| | P | 400 | 2-10-03 | 12.53 |
| | P | 500 | 2-11-03 | 13.44 |
| | | | | |
| | | | | |

**Please list additional transactions on a separate sheet if necessary.**

5.    Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws within the past three years, unless otherwise stated in the space below:

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 5 day of _SEPTEMBER_, 2003.

SIGNATURE